1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MARIA FIGUEROA,

11            Plaintiff,                         No. 2:10-cv-01818 KJN

12       v.

13   MICHAEL J. ASTRUE,
     Commissioner of Social Security,

14

15            Defendant.                         <u>ORDER</u>
     _____/

16            Plaintiff, who is represented by counsel, seeks judicial review of a final decision

17   of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for

18   Disability Insurance Benefits under Title II of the Social Security Act ("Act") and Supplemental

19   Security Income benefits under Title XVI of the Act.[1]  In her motion for summary judgment,

20   plaintiff contends that the administrative law judge ("ALJ") in this case erred by: (1) giving "very

21   little weight" to the opinion of plaintiff's chiropractor, James W. Newell, D.C. ("Mr. Newell");

22   (2) finding that plaintiff's testimony regarding her limitations was not credible to the extent that

23   it was inconsistent with the residual functional capacity found by the ALJ; and (3) not crediting

24

25        [1]  This case was referred to the undersigned pursuant to Eastern District of California Local
     Rule 302(c)(15) and 28 U.S.C. § 636(c), and both parties have voluntarily consented to proceed
     before a United States Magistrate Judge, 28 U.S.C. § 636(c)(1); Fed. R. Civ. P. 73; E. Dist. Local

26   Rule 301.  (Dkt. Nos. 7, 10.)

                                         1

1   the testimony of a vocational expert in response to hypothetical questions about plaintiff's ability

2   to work that were premised on plaintiff's proposed residual functional capacity.  (See generally

3   Pl.'s Mot. for Summ. J., Dkt. No. 18.)  The Commissioner filed an opposition to plaintiff's

4   motion and a cross-motion for summary judgment. (Dkt. No. 19.)  Plaintiff did not file a reply

5   brief.  For the reasons stated below, the court denies plaintiff's motion for summary judgment

6   and grants the Commissioner's cross-motion for summary judgment.

7   I.      BACKGROUND[2]

8            On June 20, 2006, plaintiff[3] filed an application for Disability Insurance Benefits

9   that alleged a disability onset date of September 21, 2003, and an application for Social Security

10   Income benefits that alleged a disability onset date of March 9, 2002.[4]  (Admin. Tr. ("AT") 129-

11   38.)  The ALJ assessed plaintiff's applications based on an alleged disability onset date of

12   September 21, 2003, without any discussion of the apparent discrepancy.  (AT 24.)  In any event,

13   the Social Security Administration denied plaintiff's application initially and upon

14   reconsideration.  (AT 96-99, 100-04, 109-14.)  Plaintiff requested a hearing before an ALJ, and

15   the ALJ conducted a hearing regarding plaintiff's claim on June 11, 2008.  (AT 60-80, 124.)

16   Plaintiff was represented by counsel at the hearing and testified.  For the most part, plaintiff

17   testified through an interpreter because plaintiff asserted that she could not speak English.  A

18

19        [2]  Because the parties are familiar with the factual background of this case, including
     plaintiff's medical history, the undersigned does not exhaustively relate those facts here.  The facts
20   related to plaintiff's impairments and medical history will be addressed only insofar as they are
     relevant the issues presented by the parties' respective motions.

21        [3]  Many of plaintiff's medical records refer to a patient by the name of Carmen Garcia.
     Curiously, the parties appear to agree that Carmen Garcia and Maria Figueroa are the same person,
22   and the Commissioner notes that the social security numbers for Carmen Garcia and Maria Figueroa
     are the same.  (Def.'s Cross-Motion at 2 n.1.)

23
          [4]  It appears that plaintiff previously filed an application for Social Security benefits that was
24   denied after a hearing before an ALJ.  (See AT 25, 63, 110.)  Although the ALJ in this case noted
     the prior, unsuccessful application in the hearing decision under review here, the ALJ did not rely
25   on the previously denied application because plaintiff's more recently filed applications alleged new
     impairments that the ALJ concluded rebutted the presumption of continuing non-disability.  (See
26   AT 25.)

vocational expert ("VE") also testified at the hearing.

In a written decision dated July 24, 2008, the ALJ denied plaintiff's applications for benefits based on a finding that plaintiff was "capable of performing past relevant work as a cook, dishwasher, vegetable sorter, and final finisher (construction)."[5]  (AT 32.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review.  (AT 1-5.)  Plaintiff subsequently filed this action.

////

_____

[5]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq.  Generally speaking, Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq.  Under both benefit schemes, the term "disability" is defined, in part, as an "inability to engage in any substantial gainful activity" due to "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 404.1520, 404.1571-1576, 416.920, 416.971-976; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The Ninth Circuit Court of Appeals has summarized the sequential evaluation as follows:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1          B.      Summary of the ALJ's Findings

2                  The ALJ conducted the required five-step evaluation and concluded that plaintiff

3    was not disabled within the meaning of the Act.  At step one, the ALJ found that plaintiff had not

4    engaged in substantial gainful employment since September 21, 2003, the alleged date of onset of

5    disability used by the ALJ.  (AT 27.)  At step two, the ALJ concluded that plaintiff had the

6    following "severe" impairments: "musculoligamentous strain and coccydynia"[6] (id.), stemming

7    from a previously fractured coccyx.  At step three, the ALJ determined that plaintiff did not have

8    an impairment or combination of impairments that met or medically equaled one of the

9    impairments listed in the applicable regulations.  (Id.)

10                 Prior to reaching step four of the analysis, the ALJ determined plaintiff's residual

11   functional capacity ("RFC") as follows:

12               [T]he claimant has the residual functional capacity to perform the full
                 range of medium work defined in 20 CFR 404.1567(c)[7] and 416.967(c).
13               Specifically, the claimant can lift, carry, push, and pull 50 pounds
                 occasionally and 25 pounds frequently.  She can sit for 8 hours, and stand
14               and walk for 8 hours, in an 8 hour day with normal breaks.

15   (AT 27.)  In assessing plaintiff's RFC, the ALJ addressed plaintiff's testimony and found that

16   plaintiff was not credible to the extent that plaintiff's testimony conflicted with the RFC.  (See

17   AT 30-31.)  The ALJ also addressed the opinion of Mr. Newell and gave it "very little weight."

18   (See AT 28-29.)

19                 Having assessed plaintiff's RFC, the ALJ found at step four that plaintiff "is

20   capable of performing relevant past work as a cook, dishwasher, vegetable sorter, and final

21   finisher (construction)."  (AT 32.)  The ALJ stated that the VE testified that these jobs are

22

23           [6]  Coccydynia generally refers to pain in the region of the coccyx.  See Stedman's Medical
     Dictionary 403 (Lippincott Williams & Wilkins, eds., 28th ed. 2006).

24

25           [7]  "Medium work" is defined in 20 C.F.R. § 404.1567(c) as follows: "Medium work involves
     lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to
     25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and
26   light work."  Accord 20 C.F.R. § 416.967(c).

1  performed at the medium or light exertional levels.  (<u>Id.</u>)  As a result of the ALJ's finding at step

2  four, the ALJ found that plaintiff was not disabled without reaching step five of the analysis.

3  II.       <u>STANDARDS OF REVIEW</u>

4               The court reviews the Commissioner's decision to determine whether it is (1) free

5  of legal error, and (2) supported by substantial evidence in the record as a whole.  <u>Bruce v.</u>

6  <u>Astrue</u>, 557 F.3d 1113, 1115 (9th Cir. 2009); <u>accord</u> <u>Vernoff v. Astrue</u>, 568 F.3d 1102, 1105 (9th

7  Cir. 2009).  This standard of review has been described as "highly deferential."  <u>Valentine v.</u>

8  <u>Comm'r of Soc. Sec. Admin.</u>, 574 F.3d 685, 690 (9th Cir. 2009).  "'Substantial evidence means

9  more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

10  reasonable mind might accept as adequate to support a conclusion."  <u>Bray v. Comm'r of Soc.</u>

11  <u>Sec. Admin.</u>, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting <u>Andrews v. Shalala</u>, 53 F.3d 1035,

12  1039 (9th Cir. 1995)); <u>accord</u> <u>Valentine</u>, 574 F.3d at 690.  "The ALJ is responsible for

13  determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."

14  <u>Andrews</u>, 53 F.3d at 1039; <u>see also</u> <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1041 (9th Cir. 2008)

15  ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence.").

16  Findings of fact that are supported by substantial evidence are conclusive.  42 U.S.C. § 405(g);

17  <u>see also</u> <u>McCarthy v. Apfel</u>, 221 F.3d 1119, 1125 (9th Cir. 2000).  "Where the evidence as a

18  whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the

19  ALJ's."  <u>Bray</u>, 554 F.3d at 1222; <u>see also</u> <u>Ryan v. Comm'r of Soc. Sec.</u>, 528 F.3d 1194, 1198

20  (9th Cir. 2008) ("'Where evidence is susceptible to more than one rational interpretation,' the

21  ALJ's decision should be upheld.") (quoting <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir.

22  2005)).  However, the court "must consider the entire record as a whole and may not affirm

23  simply by isolating a 'specific quantum of supporting evidence.'"  <u>Ryan</u>, 528 F.3d at 1198

24  (quoting <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006)); <u>accord</u> <u>Lingenfelter v.</u>

25  <u>Astrue</u>, 504 F.3d 1028, 1035 (9th Cir. 2007).

26  ////

1   III.    DISCUSSION

2        A.    The ALJ's Permissibly Discounted Plaintiff's Chiropractor's Opinion

3            Plaintiff contends that the ALJ improperly rejected the opinion of Mr. Newell,

4   plaintiff's treating chiropractor, who is not a licensed physician.  Mr. Newell's opinions

5   regarding plaintiff's functional ability were set forth in a form dated February 12, 2007.  (See

6   AT 296-300.)  Mr. Newell opined that, among other things, plaintiff could lift or carry at most 12

7   pounds but only occasionally; could never climb, stoop, or crouch, but could occasionally

8   balance, kneel, and crawl; could occasionally reach, push, and could frequently handle, feel, and

9   hear; could sit, stand, or walk for at most one hour in an eight-hour workday; and should avoid

10  concentrated exposure to dust, temperature extremes, fumes, and vibrations.  (See id.)  Mr.

11  Newell generally cited an x-ray and an MRI from 1999 as supporting his opinion.  (AT 296,

12  299.)  He also relied on plaintiff's poor posture, a positive "Minor's sign,"[8] and plaintiff's

13  guarded gait as medical findings that supported his opinions.  (AT 297.)  The remainder of the

14  "findings" cited by Mr. Newell in support of his opinions were plaintiff's subjective complaints.

15            The ALJ considered Mr. Newell's opinion, but gave his "non-medical opinion

16  very little weight."  (AT 28.)  Noting the lack of "serious objective findings" in the records, the

17  ALJ stated:

18            [G]iven the lack of any objective medical findings, or the results of
             diagnostic testing which support this extreme assessment, the [ALJ] gives
19            this non-medical opinion very little weight.  In fact, treating notes from
             this chiropractor do not contain any findings supporting his opinion.
20            Moreover, it appears that his opinion is speculative, and primarily based
             on the claimant's subjective complaints.

21

22  (AT 28; accord AT 29.)  The ALJ then discussed the records of examining and non-examining

23

24        [8] The "Minor's sign" associated with the neurologist Lazar Solomonovich Minor, who has
    been reported as being "the first to describe the 'sitting sign' to distinguish between lumbago and
25  sciatica: patients with sciatica use only one leg when getting out of bed; lumbago patients 'climb out'
    with both legs—Minor's sign." See A.A. Vein, Lazar Solomonovich Minor, J. Neurol. 258:1371-72
26  (2011).  Essentially, the Minor's sign appears to refer to the manner in which a patient rises to his
    or her feet from a seated or supine position.

physicians that contradicted Mr. Newell's opinions and upon which the ALJ relied in arriving at plaintiff's RFC.  (See AT 28-29.)

Under the applicable regulations, chiropractors are considered "other sources" and are not "acceptable medical sources."  See 20 C.F.R. § 404.1513(a), (d); accord 20 C.F.R. § 416.913(a), (d).  Only acceptable medical sources may provide medical opinions.  See 20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."); accord 20 C.F.R. § 416.927(a)(2). Social Security Rule 06-03p recognizes that regulations regarding the evaluation of opinion evidence, such as 20 C.F.R. §§ 404.1527 and 416.927, do not address how to evaluate the opinions of "other sources" such as a chiropractor who has seen the claimant in his or her professional capacity.  See Soc. Sec. Ruling 06-03p.  Although not binding on this court, Social Security Ruling 06-03p provides: "Opinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."

The Ninth Circuit Court of Appeals has held that "there is no requirement that the Secretary accept or specifically refute" a report of a chiropractor.  Bunnell v. Sullivan, 912 F.2d 1149, 1151-52 (9th Cir. 1990), rev'd en banc on other grounds, 947 F.2d 341 (9th Cir. 1991) (en banc).  However, more recent decisions of the Court of Appeals, some of which are unpublished but instructive, have held that the ALJ cannot reject evidence from an "other source" without comment, but need only provide "germane" reasons in rejecting the opinion evidence of an other source such as a chiropractor.  See Bain v. Astrue, 319 Fed. Appx. 543, 546 (9th Cir. 2009) ("Because Stout is not an acceptable medical source, the ALJ had only to provide 'germane' reasons for discrediting her opinion.") (citing Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir.

1993)); <u>Kus v. Astrue</u>, 276 Fed. Appx. 555, 556 (9th Cir. 2008) ("As with other witnesses, the ALJ was required to take into account evidence from Kus's chiropractor 'unless he or she expressly determine[d] to disregard such testimony' and gave reasons for doing so.") (modification in original) (citing <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001)); <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th Cir. 1996) (holding that an ALJ cannot reject lay witness testimony about how an impairment affects the claimant's ability to work without comment).[9]

Here, the ALJ considered Mr. Newell's opinions regarding plaintiff's functional limitations and provided specific and germane reasons for heavily discounting those opinions. First, the ALJ's observation that Mr. Newell's opinion was primarily based on plaintiff's subjective testimony is supported by the record. Although the form Mr. Newell completed asks the author to cite to "medical findings" in support of a functional assessment, Mr. Newell relied heavily on plaintiff's subjective complaints, which the undersigned concludes below are not credible. <u>See</u> <u>cf.</u> <u>Tommasetti</u>, 533 F.3d at 1041 ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible."). For example, in assessing plaintiff's ability to lift and carry weight, Mr. Newell stated: "Patient is unable to bend forward at the waist > 45° w/o increasing subjective complaint." (AT 298.) In assessing plaintiff's ability to reach, handle, feel, push, pull, and hear, Mr. Newell's "medical findings" consist solely of plaintiff's subjective reports of her own

---

[9]   Decisions of federal district courts sitting in California are in accord. <u>See</u> <u>Lederle v. Astrue</u>, No. 1:09-cv-01736 JLT, 2011 WL 839346, at *11 (E.D. Cal. Feb. 17, 2011) (unpublished) ("As a general rule, if the ALJ chooses to reject evidence from 'other sources,' the ALJ may not do so without comment. In addition, the ALJ must give specific, germane reasons for rejecting the opinion of the witness.") (citations omitted); <u>Areallano v. Astrue</u>, No. ED CV 09-1186-PJW, 2010 WL 2991145, at *4 (C.D. Cal. July 26, 2010) (unpublished) ("An ALJ must provide reasons that are germane to a chiropractor's opinion in order to discount it."); <u>accord</u> <u>Rodriguez v. Astrue</u>, No. EDCV 08-1106 RNB, 2009 WL 1586529, at *2 (C.D. Cal. June 4, 2009) (unpublished); <u>Harris v. Astrue</u>, No. CV 06-7309-RC, 2008 WL 2852248, at *5 (C.D. Cal. July 23, 2008) (unpublished); <u>see also</u> <u>Sewasky v. Astrue</u>, No. EDCV 10-147-MAN, 2011 WL 3204361, at *5 (C.D. Cal. July 26, 2011) (unpublished) ("[P]laintiff's clinicians are not 'acceptable medical sources' or 'treating sources,' and thus, there is no requirement that the ALJ give specific and legitimate reasons for disregarding their opinions.") (footnote omitted).

functional abilities. (AT 297.) Similarly, Mr. Newell's "medical findings" in support his

assessment of plaintiff's ability to use her hands and feet state, in part: "Patient claim [*sic*] that

reaching above shoulder level aggravates LBP." (AT 300.) Mr. Newell's opinion is almost

entirely unsupported by actual medical findings even though such findings are requested in the

form he completed; rather, plaintiff's subjective complaints provide the basis for the limitations

cited by Mr. Newell. Another set of records prepared by Mr. Newell, which immediately precede

Mr. Newell's functional assessment in the record, indicate diagnoses of plaintiff, but consist of

plaintiff's subjective reports from August 2006 through February 2007. (See AT 292-95.)

Second, the record supports the ALJ's finding that objective medical findings did

not support Mr. Newell's extreme assessment of plaintiff's functional abilities. In terms of

laboratory findings, Mr. Newell relied on an x-ray and an MRI from 1999 in arriving at his

functional assessment eight years later in 2007. (See AT 296.) Moreover, Mr. Newell did not

explain how the x-ray or MRI supported the limitations he found. And although plaintiff is

correct that Mr. Newell performed "tests" or made observations, such as the positive Minor's

sign, the ALJ did not err by finding that Mr. Newell's records did not support the degree of

limitation assessed. Indeed, the ALJ's citation to medical records prepared by acceptable

medical sources that contradicted Mr. Newell's extreme assessment, including the reports of

examining physicians and state agency physicians, compellingly supports the ALJ's rejection of

Mr. Newell's assessment. (AT 28-29; see also, e.g., AT 320 (August 2007 report of Richard A.

Beyer, M.D., noting plaintiff's excellent strength during a neurological examination and largely

normal nerve conduction studies); AT 337 (May 2007 treatment notes of Carol Kimball, M.D.,

noting on physical examination that plaintiff was "in no acute distress" and that plaintiff's back

was "minimally tender").)

In short, the ALJ provided specific and germane reasons for discounting Mr.

Newell's opinion of plaintiff's functional abilities, which are supported by the record. Moreover,

the ALJ relied on opinions provided by acceptable medical sources in calculating plaintiff's RFC.

9

1  Accordingly, the ALJ did not err in evaluating Mr. Newell's opinion.

2       B.    The ALJ's Credibility Determination Was Not Erroneous

3            Next, plaintiff attacks the ALJ's credibility determination.  The ALJ found that

4  plaintiff's statements regarding "the intensity, persistence and limiting effects of [plaintiff's]

5  symptoms [were] not credible to the extent they [were] inconsistent with the [RFC]."  (AT 30.)

6            In Lingenfelter v. Astrue, the Ninth Circuit Court of Appeals summarized the

7  ALJ's task with respect to assessing a claimant's credibility:

8            To determine whether a claimant's testimony regarding subjective
             pain or symptoms is credible, an ALJ must engage in a two-step analysis.
9            First, the ALJ must determine whether the claimant has presented
             objective medical evidence of an underlying impairment which could
10           reasonably be expected to produce the pain or other symptoms alleged.
             The claimant, however, need not show that her impairment could
11           reasonably be expected to cause the severity of the symptom she has
             alleged; she need only show that it could reasonably have caused some
12           degree of the symptom.  Thus, the ALJ may not reject subjective symptom
             testimony . . . simply because there is no showing that the impairment can
13           reasonably produce the degree of symptom alleged.

14           Second, if the claimant meets this first test, and there is no
             evidence of malingering, the ALJ can reject the claimant's testimony about
15           the severity of her symptoms only by offering specific, clear and
             convincing reasons for doing so. . . .
16

17  Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted).  In weighing a

18  claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for

19  truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her]

20  conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third

21  parties concerning the nature, severity, and effect of the symptoms of which [claimant]

22  complains."  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original)

23  (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)); see also Burch, 400 F.3d

24  at 680 ("In determining credibility, an ALJ may engage in ordinary techniques of credibility

25  evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in

26  claimant's testimony.").  If the ALJ's credibility finding is supported by substantial evidence in

1    the record, the court "may not engage in second-guessing."  Id. at 959.

2            Here, the ALJ discounted plaintiff's testimony regarding her functional limitations

3    for several reasons that are supported by the record.[10]  For example, the ALJ stated that "the

4    record does not show that the claimant is receiving any regular, ongoing specialized treatment for

5    her complaints."  (AT 31.)  Plaintiff cites Dr. Kimball's treatment of plaintiff, which consisted of

6    prescribing narcotics and other medications.  However, the ALJ's point appears to be that

7    plaintiff was not undergoing treatment by a specialist, such as an orthopedist or neurologist, for

8    plaintiff's complaints of lower back pain.  In a similar vein, the ALJ reasonably noted that

9    plaintiff's treatment was conservative and that no physicians had referred plaintiff for additional

10   testing or hospitalization for further investigation of plaintiff's complaints.  See Tommasetti, 533

11   F.3d at 1041 (noting that a conservative treatment plan is a permissible basis for discounting

12   testimony of all-disabling pain).

13           The ALJ also noted that the "record reflects that examinations have not revealed

14   any significant findings, or reflected any neurological involvement, or muscle wasting or atrophy,

15   usually associated with pain and inactivity."  (AT 31.)  On a related note, the ALJ reasoned that

16   the record did not contain "any diagnostic testing such as X-rays, tomography, magnetic

17   resonance imaging, or nerve conduction studies, that shows any significant abnormality."  (Id.)

18   These reasons for discounting plaintiff's credibility are supported.  Among other treatment notes,

19   Dr. Beyer noted in July 2007 that nerve conduction studies performed on plaintiff were almost

20   entirely normal, and his neurological examination revealed that plaintiff had "excellent strength,"

21   normal muscle tone, and good range of motion in her neck.  (AT 319.)  In March 2006, Graham

22   Bray, M.D., an examining orthopaedic surgeon, conducted a follow up examination of plaintiff

23   that resulted in unremarkable findings regarding plaintiff's back and a recommendation that

24   _____

25   [10]  Unaddressed by plaintiff is the ALJ's reasoning that although plaintiff claimed mental
     limitations, the record did not reveal that plaintiff underwent dedicated mental health treatment, a
     recommendation for more aggressive therapy than medication, or evidence of hospitalization.  (See
26   AT 31.)

                                                    11

1  plaintiff only receive chiropractic therapy for an estimated four "flare-ups" that plaintiff might

2  expect to experience in a year.  (See AT 242-46.)  In December 2007, John C. Forsyth, M.D.

3  examined plaintiff and noted that plaintiff's spine showed normal alignment, plaintiff was not

4  particularly tender over the sacrum or coccyx, plaintiff's range of motion about the spine was

5  relatively full, and plaintiff's gait was normal.  (AT 354.)  These medical records and others in

6  the record support the ALJ's reasoning.  And to the extent that plaintiff would again rely on Mr.

7  Newell's opinion, the ALJ properly rejected that opinion and was nevertheless entitled to favor

8  the supported treating and examining observations of licensed physicians over the opinions of a

9  chiropractor who is not an acceptable medical source.

10        The ALJ provided several reasons for discounting plaintiff's testimony that are

11  supported by the record.  Accordingly, the undersigned concludes that the ALJ did not err in

12  assessing plaintiff's credibility.

13        C.    The ALJ Did Not Err By Not Crediting the VE's Responses To Plaintiff's
              Counsel's Hypothetical Questions

14

15        Finally, plaintiff argues that the ALJ erred by not crediting the VE's testimony

16  about plaintiff's ability to work in response to hypothetical questions premised on the RFC

17  framed by plaintiff's counsel.  Plaintiff contends that the ALJ erred by not adopting the

18  functional limitations found by Mr. Newell, and testified to by plaintiff, in the RFC, and thus did

19  not ask hypothetical questions of the VE.  Plaintiff's counsel, however, posed hypothetical

20  questions to the VE using an RFC framed by plaintiff's counsel.  Plaintiff's argument is entirely

21  contingent on her arguments rejected above.  Because the undersigned concluded that the ALJ

22  properly discounted the functional assessment of Mr. Newell and permissibly discounted

23  plaintiff's subjective testimony, the ALJ did not err in questioning the VE.

24  IV.    CONCLUSION

25        For the foregoing reasons, IT IS HEREBY ORDERED that:

26        1.    Plaintiff's motion for summary judgment (Dkt. No. 18) is denied.

12

2.      The Commissioner's cross-motion for summary judgment (Dkt. No. 19) is granted.

3.      The Clerk of Court is directed to enter judgment in the Commissioner's favor.

IT IS SO ORDERED.

DATED:  September 12, 2011


_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE